**UNITED STATES DISTRICT COURT**
**District of New Jersey**

<table>
<tr><td>

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

</td><td>

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

</td></tr>
</table>

**NOT FOR PUBLICATION**

**LETTER-OPINION & ORDER**

May 24, 2006

Ramon W. Pagan, Esq.
Law Office of Ramon W. Pagan
2116 Williamsbridge Road
Bronx, NY 10461

Peter G. O'Malley, Esq.
Assistant U.S. Attorney
Christopher J. Christie, U.S. Attorney
Federal Building Room 700
970 Broad street
Newark, NJ 07102

     Re:    **U.S. v. $487,825.00**
            **Civil Action No.: 05-2481 (JLL)**

Dear Counsel:

     This matter having been opened to the Court by way of Plaintiff United States of America's (hereinafter "Plaintiff" or "the Government") motion for the entry of Default Judgment and a Final Order of Forfeiture, pursuant to Rule C(6)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Fed. R. Civ. P. 55(b), as to the Defendant in rem $487,825.00 in United States currency (hereinafter "the Defendant currency"). Claimant David Aguasviva (hereinafter "Claimant") has filed opposition to this motion. The motion is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons stated herein, Plaintiff's motion for the entry of Default Judgment and a Final Order of Forfeiture are granted.

-1-

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 2, 2005, the Government initiated the present civil action <u>in rem</u> pursuant to 21 U.S.C. § 881(a)(6).  This matter arises following a traffic stop of a vehicle driven by Claimant, on or about January 25, 2005, by the Palisades Interstate Parkway Police (hereinafter "PIPP") in New Jersey.  (Compl. ¶ 7).  The stop occurred because the vehicle's inspection sticker was expired and a citation was issued for "failure to inspect."  (<u>Id.</u>).  During the stop, a PIPP officer allegedly obtained permission from Claimant to search the vehicle.  (Compl. ¶ 8).  The search uncovered bundles of United States currency, totaling $487,825.00, contained inside plastic bags and shoe boxes.  (Compl. ¶ 9).  The $487,825.00 consisted of the following denominations:

(a)     874 x $100 bills = $87,400;
(b)     1016 x $50 bills = $50,800;
(c)     16,632 x $20 bills = $332,640;
(d)     1,437 x $10 bills = $14,370;
(e)     522 x $5 bills = $2,610; and
(f)     5 x $1 bills = $5.

(Compl. ¶ 28).  While the Claimant admits that these denominations were contained in shoe boxes, (Answer ¶ 28), he also denies that a PIPP officer discovered bundles of currency in shoe boxes, (Answer ¶ 9).

During the traffic stop, PIPP contacted United States Immigration and Customs Enforcement (hereinafter "ICE") for assistance.  (Compl. ¶ 10).  After the arrival of Special Agents of ICE, the currency and the Claimant were transported by PIPP to PIPP Headquarters.  (Compl. ¶ 11).

At PIPP Headquarters it is undisputed that ICE Special Agents interviewed the Claimant in the presence of PIPP officers.  (Compl. ¶ 12).  However, the facts that follow are denied by the Claimant.  The Government asserts the Claimant indicated he had been living in the Dominican Republic for the last three years and that he comes to the United States for business.  (Compl. ¶ 13). The Claimant also previously lived in the Bronx, New York.  (<u>Id.</u>).  When he comes to the United States he stays with his brother in Garfield, New Jersey.  (<u>Id.</u>).  The Claimant purportedly told the agents that his business involves buying clothes at Target stores in the United States and then reselling them in the Dominican Republic producing an income of about $10,000.00 per month in United States currency.  (Compl. ¶ 14).  As of that week, the Claimant had already purchased about $1,200.00 worth of merchandise for his business.  (<u>Id.</u>).

The Government also asserts that the Claimant stated that on the night of January 24, 2005 he called a long-time client of his, Louis Moreno, in the Dominican Republic.  (Compl. ¶ 15).  During that conversation Moreno allegedly told the Claimant to pick up some money for him and that he would give him further instructions the following day.  (Compl. ¶ 16).  On

January 25, 2005, the date of the instant traffic stop, the Claimant contacted Moreno for the instructions and was told to call a Julio LNU (last name unknown) because Julio owed Moreno a favor. (Compl. ¶ 17). Specifically, Moreno wanted the Claimant to pick up money from Julio and then call Moreno for instructions as to who the Claimant should deliver the money. (Compl. ¶ 18). The Claimant was to call Julio for a meeting time and place to pick up the money. (Id.). That same day, the Claimant met Julio at a Pathmark parking lot in New York, New York where he received the Defendant currency. (Compl. ¶ 21). It was reported that at the time of the traffic stop, the Claimant was on his way to the Palisades Mall where the Claimant would contact Moreno for instructions on where to take the money. (Id.).

The Government states that during the interview at PIPP Headquarters, the Claimant initially stated that he had no knowledge that he was transporting currency, but then later admitted he knew he was transporting currency and that he had to contact Moreno for instructions. (Comp. ¶ 23). The Claimant reportedly admitted to the agents that he had an arrest record and that he had documentation at his brother's residence that he previously had $19,000.00 in United States currency seized from him which he claimed was later returned. (Compl. ¶ 22). During this interview, the Claimant consented to a search of the area at his brother's residence in Garfield where he was staying. (Compl. ¶ 24). Once inside the residence, the agents obtained the consent of the homeowner to search the remaining parts of the house. (Compl. ¶ 25). During this search, the Claimant proved unable to produce any paperwork documenting the prior return of $19,000.00 in currency. (Compl. ¶ 26).

On January 26, 2005, an ion scan test was conducted revealing the presence of cocaine that was above the alarm level, indicating the currency had been around a significant amount of cocaine. (Compl. ¶ 27). In addition, the Government asserts that the denominations of the seized currency are consistent with narcotics money laundering proceeds. (Compl. ¶ 29). Accordingly, since the Claimant was not the owner of the currency, (Compl. ¶ 30), the Government claims that the Claimant was acting as a courier of drug proceeds on behalf of its owner. (Compl. ¶ 31).

As no answer or motion in lieu of an answer had been filed, on or about September 23, 2005, default was entered against the Defendant currency for failure to appear and defend. Plaintiff subsequently filed the present motion for default judgment and an order of forfeiture.

Opposition to the motion was untimely filed five days prior to the return date. In opposition to the present motion, Ramon A. Pagan, Esq., counsel for the Claimant, submitted his own Affirmation of the facts along with the Claimant's Notice of Claim and Verified Answer. In his Affirmation, Mr. Pagan affirms, under penalty of perjury, that he is "fully and personally familiar with the facts and circumstances of this matter." (Pagan Affirm. ¶ 1). Mr. Pagan goes on to affirm the following facts:

6.      The Claimant does have a meritorious defense to the action in that the money is not the proceeds of any illegal activity. The Claimant will provide this Court with ample and substantial evidence of legitimate business activities related

-3-

to this currency, and, thus, will defeat the Plaintiff's complaint.

7.      Finally, the Claimant's delay [in filing his Notice of Claim and Verified Answer] is in no way due to any culpable conduct.  In essence, communication is difficult with Claimant and his counsel because Claimant resides in the Dominican Republic.  Mail is unusually slow to be delivered there, and a valid notary for the purposes of United States federal courts requires a visit, and appointment, with the Consulate in the Dominican Republic.  Nevertheless, the Notice of Claim and Verified Answer have been filed.

The Claimant's Notice of Claim and Answer, consists primarily of general admissions and denials without any factual detail.  He also asserts the following three affirmative defenses: (1) failure to state a claim; (2) the action arises out of an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution; and (3) the forfeiture of the Defendant currency would violate the Eighth Amendment Excessive Fines Clause of the United States Constitution.  (Answer ¶¶ 44-46).

## LEGAL STANDARD

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $ 55,518.85 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).

## DISCUSSION

There are three reasons why the Claimant's arguments fail.  First, Mr. Pagan's Affirmation is stricken as improper.  According to L. Civ. R. 7.2(a), this Court shall disregard legal argument contained in Mr. Pagan's Affirmation, as "Argument of the facts and the law shall not be contained in affidavits, . . . [and such] will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both."  His Affirmation is replete with legal argument and nothing else in the record before this Court demonstrates admissible evidence supporting the Claimant's position.  Therefore, the Affirmation is stricken.

Second, the Claimant does not have standing to assert a claim over the Defendant currency.  The Court has not been presented with any evidence that the Claimant is the owner of the Defendant currency, nor did the Claimant timely file a statement of claim and answer.  in civil forfeiture actions, a claimant must satisfy both constitutional, see Article III of the United States Constitution, and statutory standing, see Supplemental Rules for Certain Admiralty and Maritime Claims C(6), requirements.  In order to satisfy Article III standing requirements in civil forfeiture cases, the claimant must demonstrate ownership of the property or they have no standing to contest the forfeiture of the property.  Rule C(6) states in relevant part:

(i) a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right: (A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), . . .; [and] (iii) a person who files a statement of interest in or right against the property must serve an answer within 20 days after filing the statement.

In the instant case, it is undisputed that the Claimant failed to file his claim and answer within the applicable time frames set forth in Rule C(6). Instead, the Claimant's Notice of Claim and Answer were filed about four months after the Complaint was served on counsel for Claimant and after publication of notice occurred. Mr. Pagan affirms that the delay was due to his difficulty communicating with his client in the Dominican Republic and the inconvenience of obtaining a notary stamp. However, no explanation is presented as to why an extension of time from the Court could not have been requested.

Moreover, neither Mr. Pagan's Affirmation nor the Claimant's Notice of Claim and Answer assert that the Claimant, David Aguasviva, is the owner of the Defendant currency. The most that can be gleaned from the Answer is a denial of paragraph 30 in which the Government states: "Aguasviva does not own the defendant currency." (Compl. ¶ 30; Answer ¶ 30). To construe this as an affirmative claim of ownership over the subject currency, the Court would have to construe the double negative. In contrast, the Government has asserted that the Claimant stated he was transporting the money for Marino and that the money did not belong to the Claimant. While the Claimant does deny these assertions, there is no contradictory evidence that the Claimant does in fact own the Defendant currency. Without such proof, the Claimant lacks standing to assert a claim over the Defendant currency.

Third, even if this Court were to consider counsel's Affirmation that his client has a meritorious defense, and that the Claimant has standing, without any further factual elaboration the Affirmation is plainly insufficient to defeat a motion for default judgment. The Affirmation fails to demonstrate a meritorious or litigable defense to the Government's claims that the Defendant currency was (1) "furnished or intended to be furnished by any person in exchange for a controlled substance or . . . proceeds traceable to such an exchange, [or was] used or intended to be used to facilitate any violation of [Title II of the Controlled Substances Act, Title 21 United States Code § 801, et seq.]," 21 U.S.C. § 881(a)(6); (2) used to conduct or attempt to conduct a financial transaction involving the proceeds of specified unlawful activity "with the intent to promote the carrying on of specified unlawful activity, 18 U.S.C. § 1956(a)(1)(A)(I); and/or (3) used by someone who "knowingly engage[d] or attempt[ed] to engage in a monetary transaction in criminally derived property that is of a value greater than $ 10,000 and is derived from specified unlawful activity. . . ." 18 U.S.C. § 1957(a).

The only evidence submitted to this Court in support of the Claimant's meritorious defense to the seizure of the Defendant currency is Mr. Pagan's affirmation that:

> The Claimant does have a meritorious defense to the action in that the money is not the proceeds of any illegal activity. The Claimant will provide this Court with ample and substantial evidence of legitimate business activities related to this currency, and, thus, will defeat the Plaintiff's complaint.

(Pagan Affirm. ¶ 6). In <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 196 (3d Cir. 1984), the Third Circuit stated:

> If we allow the setting aside of a default judgment on the mere recitation of the relevant statutory language or a phrase in the Federal Rules of Civil Procedure, then we will be establishing a new right to automatically set aside any default judgment if counsel is diligent enough to quote the applicable statute or rule of civil procedure.

In the present matter, there is no explanation as to why the Claimant himself did not submit his own affirmation or certification setting forth his meritorious defense. Affirmations and certifications do not require notary stamps as Mr. Pagan points out are so difficult to obtain in the Dominican Republic. Further, exactly how Mr. Pagan is able to affirm that he personally knows the money is not the proceeds of any illegal activity is curious, yet he fails to explain the basis for his personal knowledge to the Court. Nevertheless, Mr. Pagan's conclusory affirmation is insufficient to establish a meritorious defense to support vacating the default or denying the entry of default judgment.

In sum, since the Court has stricken Mr. Pagan's Affirmation, there was no need to go any further, because no other evidence was presented to the Court supporting the Claimant's opposition to the entry of default judgment. Nevertheless, the Claimant has not demonstrated standing and has he not established a meritorious defense to support vacating the default. In addition, no other claims or answers have been filed with the Court within the time permitted by Rule c(6) of the Supplemental Rules by any other potential claimants in this matter. Therefore, the Government's motion for default judgment and entry of a final order of forfeiture is hereby granted.

## <u>CONCLUSION</u>

For the foregoing reasons, it is on this 24th day of May, 2006,

**O R D E R E D** that Plaintiff's motion for entry of Default Judgment and a Final Order of Forfeiture [CM/ECF Docket Entry #4] are **GRANTED** against the Defendant currency, namely $487,825.00 in United States currency, and no right, title or interest in the Defendant currency shall exist in any other party; and it is further

**O R D E R E D** that proceeds from the sale of any forfeited currency, after the payment of costs and expenses incurred in connection with the forfeiture, sale and disposition of the

forfeited property, shall be deposited forthwith by the United States Customs into the Department of Treasury Asset Forfeiture Fund, in accordance with the law; and it is further

**O R D E R E D**  that the Clerk of the Court shall **CLOSE** the Court's file on this matter.


 /s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE